The final case on calendar for argument today is Law Offices of Richard E. Wilson, LLC v. Laurence Smith et al. Nathan Shimodoy Please be seated, Counsel. Please proceed, Counsel. Nathan Shimodoy Good morning, Your Honors. My name is Nathan Shimodoy, Counsel to Appellants. In time permitting, I'd like to reserve five minutes of my time for rebuttal. Counsel, please be reminded that the time showing is your total time remaining. Nathan Shimodoy I'm aware. Thank you, Your Honor. May it please the Court. The District Court erroneously held that Mr. Smith and Mr. Heller waived their right to have the courts decide the issue of arbitrability. Negrompa is a controlling, en banc decision by this Court on the issue of waiver, where Your Honor, Judge Schroeder sided with the majority, finding that despite Ms. Negrompa's extensive participation in arbitration, she did not waive her right to object. Because there was no waiver in Negrompa, there should be no waiver here, where Mr. Smith and Mr. Heller, their participation was far shorter in duration and substance. They presented a forceful objection at the outset, and they pursued targeted discovery. Forceful, Counsel? Isn't that overstating it a little? Your Honor, if we look at the statements that were made by Mr. Smith and Mr. Heller below, and we compare them to Negrompa's statements, there's striking parallels. I may direct your attention to... We know what it says. I just don't know if I would characterize those as forceful. They seemed a little more equivocal to me than forceful. And that's also how the District Court described the objection in his opinion. But that similar argument was raised in the dissent, and specifically rejected by the majority in Negrompa. In Negrompa, the objection raised serious concerns about the validity of the arbitration clause. The objection in Negrompa is no more equivocal than the one that's present in this case. Our clients also pursued targeted discovery as to the issue of arbitrability, and they withdrew before a hearing on the merits. The problem that bothers me the most about this case, and we have not discussed this case, so I don't know how my colleagues feel about it, it appears to me that the impetus for requesting arbitration was after there was an adverse ruling by the arbitrator. What's your response to my perception? Your Honor, you're referring to the discovery dispute? Correct. And that discovery dispute, in what the record reflects, is that dispute touched upon these same issues of arbitrability that are at issue here. My question was, is it a fair perception that the objection to arbitration was solidified once that adverse ruling was obtained? And, Your Honor, I would direct your attention to the— Could you give me a yes or no on that? I don't believe that that discovery dispute is what was the impetus for my client raising their objections. So, no, I don't believe that the discovery dispute was the primary point to focus on. Is that fact present in Negrompa? Yes, in Negrompa, Mr. Negrompa pressed her counterclaims and tried to pursue counterclaims in the arbitration. And her request— Was there an adverse ruling against— Yes, in Negrompa, her request to pursue counterclaims was specifically denied. And that way, there's striking parallels on that front. In addition, the discovery that was pursued in Negrompa and in this case both go to not only the merits, but in our case specifically, the discovery goes to the issue of arbitrability. Our clients, their discovery was far more limited than what took place in Negrompa. They submitted a single discovery request, and that discovery request had three questions. The first of those three questions also specifically went to the arbitrability issue. Counsel, this is a lawyer-client dispute about fees and representation. And what I was not clear about from reading the briefs was the extent of prior relationship between the parties and the prior disputes and whether there was actually—whether anything had ever been arbitrated in the past. Your Honor, the record is silent as to any prior arbitrations. And as far as I'm aware, there aren't any prior arbitrations before the one that's before you today. But there had been prior representations, I take it. You're correct. The representation started in 2009, and that's the foundational engagement agreement that is disputed, and that goes to the issue of arbitration. But the time period for the relationship is not disputed, that this was an ongoing relationship. You're correct, Your Honor. It started in 2009 and continued all the way up until the last couple of years. I'd also point to the timeline of how long these parties were participating in arbitration. Negrompa participated in arbitration after her initial objection for eight months. This arbitration lasted three months, from November 2, 2020, to February 2, 2021. That's half the time. This was a very rapid, streamlined process. Well, that's what arbitrations are supposed to be. That's correct. And what happened in this arbitration, in this short span, we submitted our discovery request asking about this arbitrability question. And Your Honor, going back to Judge Rawlinson's question about whether it was the discovery dispute or something else that caused them to object, it wasn't the discovery dispute. It was the responses to the discovery requests. Those responses came in on January 23, 2021, which is about a week before they formalized their objection. Counsel, Negrompa was largely about unconscionability. Do you see that as a different set of circumstances than we have here? You're correct, Your Honor. There's no unconscionability-type overarching issue in this case. The primary, I guess, overarching issue, similar to this unconscionability piece, is that we're talking about a 2009 engagement agreement that references different parties than the parties to the current dispute. So while it's not the same type of unconscionability piece, there is these larger questions that need to be resolved at a trial. The difficulty here is that it seems that what your clients are saying is we went into this arbitration solely to be able to determine whether there existed this agreement to arbitrate, and once we found out that it did not exist, we pulled the ripcord. The problem is that this was, I don't think, made clear that this was how they were proceeding because the arbitrator, I don't think, had that impression. I think the other side reasonably didn't have that impression either. So if this was the approach, and your clients are, I think, our lawyers, it would have behooved them to make clear we are not consenting to the arbitration, we do not believe this is a proper forum. If, in fact, we sign this agreement, then we'll revisit that. We don't think we did sign this agreement. Let's have limited discovery and did this in paper under proper reservation of rights, and I think this would be a very different case, but that's not the record here. I agree. There's not an in-depth discussion at any point in the record going to the issue of arbitrability. You would have to look at the initial objection that was raised, and our clients do state on excerpts of records, page 111, as we have previously stated, we are not in agreement that we have consented to the jurisdiction of the ADR. So they're giving the arbitrator and parties notice that this is an issue, and if you look at the discovery they submitted in this short three-month window, about a month after this statement was made, their first question asked point blank, can you give us the signed engagement agreement? So this wasn't a mystery to the other parties. There are pieces here in the record that do reflect arbitrability was a question that had to be addressed. True, but they also say, you know, we're leaning in that direction after speaking with counsel. So that is where the lack of forcefulness becomes a problem. Yes, understandable, and you have to take that second statement in context of the first one, and this is a statement by unrepresented parties expressing their intent of their best position and understanding of their position at the time. Lawyers though, right? Your clients are lawyers? One of the clients is a transactional lawyer that lives in New York. Lawyer nevertheless. Nevertheless. Which, yeah. I wanted to compare that to the NAGRAMPA, sorry, page 1277. It says, as a factual matter, NAGRAMPA's counsel first act was to object to proceeding with arbitration. We are not ready or willing to proceed with arbitration. Don't you think that's a different statement than the one your client made? Very different statement. I think it's very similar, Your Honor, respectfully. Their first statement is, as we have previously stated, suggesting that this has been discussed before, we are not in agreement that we have consented to the jurisdiction of the ADR. There is more. I understand, Your Honor. And if you look at NAGRAMPA, that same page at 1277, there's also more in that statement too. He's asserting serious concerns about the validity of the arbitration clause. It's not completely forceful, even though that's how the NAGRAMPA majority did describe NAGRAMPA's objection. They described it as forceful. It's more forceful than the one that your clients had. I wanted to ask you, I was focused on the unconscionability portion of NAGRAMPA, but where in here is there an adverse ruling? Point me to that in the case. You said there was an adverse ruling against NAGRAMPA. So I don't have the pencil side to it. It's the counter demand or a counterclaim that was presented by NAGRAMPA, and she tried to press this counterclaim in the arbitration, and it was ultimately denied. Well, it was not accepted. It was not denied. The counter demand was not denied. It was not accepted because she couldn't pay the fouling fee. So that's a lot different than getting an adverse ruling. I can see the distinction. Ultimately, she did press counterclaim, and she also pressed for a motion for a continuance. And that's another piece. And if I may, Your Honors, I would like to reserve a couple minutes for rebuttal. Thank you, counsel. Chief Judge Schroeder, Justice Rawlinson, Justice Brass, may it please the court. You got us all wrong. I'm not cheating. She's no longer the chief judge. She was, and we're not justices. There is a famous statement by one of our former deceased colleagues that there is no justice here. Well, now you're scaring me. May it please the court. You might want to start over. May it please the court. My name is Rich Wilson. I represent the appellee in this case. You know, the crux of this matter, we keep going on Nagrampa. The huge difference in Nagrampa, and I think, Justice, as you brought out, was that was unconscionability. They had an agreement. And in reading the decision, the issue came up that she was basically trying to protect her objection to protect her rights because she was also saying it should not apply because it's unconscionable. And they made the strong objections that they did. In this case, when you talk about a forceful objection, they either signed the agreement or they didn't. And you're right. One is an attorney who, although he has less gray hair than me, has done it for 10 years longer. You know, they're either pregnant or they're not. It's my wife's birthday. I know it or I don't. But they've been very squishy because they start out by saying, well, can you give us a signed agreement from 12 years ago? No, I can't. Well, we're not sure if we signed it. Well, this is what perplexes me about this case. It seems like it should be in a law school practice seminar because we have a situation where there are lawyers on both sides and nobody has a signed agreement of their engagement agreement. Well, I guess the court said that they're dueling declarations. You know, obviously my practice as a practicing attorney at my own office, when I say mine, my client, I guess it's still me. One and the same. One and the same. But you do engagement agreements. And Mr. Smith is the lawyer. I can't imagine, and the suggestion that he would not, having hired, retained my firm on four or five different matters, never have signed an engagement agreement. But that same goes for you as well. Both of you should have had copies of the agreement. Well, I guess the thing is, in having a relationship in the real world, and I don't mean to come off – You've all been in the real world. That doesn't cut it. But you have a relationship with clients, and up until recently it was a good relationship with clients. Sure, they were slow pay, but you understand people have issues and whatnot. You don't always keep those files. After 10 years, I get rid of files. I just do. I never expected a situation like this to come up. And just – Damn it. I'll get it right. Judge, you brought up the issue of the prior relationship and from 2015. Because we did have an issue, and it's in the record, and I sent them an email. If there's an issue about bills, fees, or costs, here's the arbitration provision. We'll call DPR. We'll go to arbitration. Not a response. Now, that would have been a golden opportunity for them to sit back and say, gee, Mr. Wilson, what engagement agreement? And it's also in the record, the correspondence with the secretary, Mr. Smith's secretary, where I say, you said you were going to send it. Please resend it. Then it ends. I don't have a photographic memory. I can't tell you what I did last Tuesday. But I'm pretty sure I would have gotten an agreement or I would have insisted on it. I think there's an ethical obligation we have as lawyers to have a contractual written agreement. How much is at stake here? How much do you claim you're owed? It's $309,000, and then there's an amount of interest. So as a solo practitioner, it's a big amount of money. One other thing about forceful, that we're not going to arbitrate, objection. It's kind of moved on from, well, show us the agreement, to, well, we can't find one, to, well, we don't recall signing it, to now it's we didn't sign it. Well, doesn't that kill the grandpa argument 100 percent? Because if they say today we had no agreement, then that would have been what happened in the beginning. And then there would be no reason to do arbitration in the first place. Because without an agreement, there's no arbitration. The forceful argument would have been, no, we never signed it. We're not agreeing to anything. Arbitrator would have issued sort of the order to show cause. Then that's what went to state court. They removed it to the district court. Now, Chief Judge Seabright had all of this before him. And you can't move the goalpost so it fits your argument. And really the suggestion is this. Mr. Smith being an attorney, Mr. Heller being a sophisticated businessman, if they put in a declaration, we never signed the agreement. And you can see it as their argument moves. And I actually find the agreement. Let's say I had it in a Cron file and I somehow maintained a Cron file from 2009. Here's the agreement. It's either bad form at best or it's perjury at worst. So they kept pushing it along. And at the end, the reason why it finally came up is they were comfortable enough that I couldn't produce it, I didn't have it. And they went through the discovery. Discovery was not limited to what's arbitrable, the agreement. They knew they signed it or they didn't. But they hedged and they fudged it all the way up until the end. When they were confident enough, I didn't have one. And then they said, we're not going to do it. But they participated in this. And their time to say something was in 2015. And I think the district court took all of this into consideration. And the fact that it is not about unconscionability. They say they didn't sign it, then they should not have done arbitration at all. And one last point, and I'll be brief because to me it's a very concise and short, compact issue. You have Mr. Heller. And this is what they don't – they shy away from and they don't bring up. And this is in the ER 6364. This is a January 29, 2021 letter that Mr. Heller sent to the arbitrator and myself. I'm sorry, he sent it to me. And this is barely a week before they pulled the trigger and said we're not going to go forward. In the interim, we'd like to suspend the current arbitration while we attempt to work something out that is satisfactory to all involved and documented. I mean, if they're not participating, there's nothing to suspend. What's the ER number on that? Judge, that is 63 to 64. But you wouldn't say that. And I can understand. I know the case before, you had laypeople and churchgoers and whatnot. You might say something like that. But these are sophisticated individuals. You don't suspend something that you didn't start and you didn't agree to proceed with. Judges, if there's any questions you have, I'll ask them. If not, I don't think I have anything else to add. All right. Thank you, counsel. Thank you very much. And by the way, it's a privilege to be here. Thank you.  It's a privilege for us as well. Justice or no justice. Yeah, justice or no justice. Mr. Smith. Your Honors, I believe Ms. Wilson is focusing on the more fundamental issue of the arbitrability question. So the district court below, and we agree with the district court, there are questions related to the issue of arbitrability, whether Mr. Smith and Heller executed this agreement and the scope of that agreement, whether it includes the issues that Mr. Wilson is now seeking in circuit court. Would the arbitrator be able to address those points? No, Your Honor. Arbitrability is a question specifically reserved for the courts. There's a whole body of case law about arbitrating arbitrability. So once the ruling is made that you agreed to arbitration, there is no way to revisit that, correct? Once the district court orders us to arbitration based on arbitrability, whether we agreed, yes, we would be going to arbitration to resolve that. Your clients concede they owe Mr. Wilson money, or do they think they don't owe him anything? The record is silent as to exactly what our positions are related to Mr. Wilson's claims. We filed an answer generally denying. And so I don't want to speculate. We've now spent years litigating the question of arbitrability. Mr. Wilson claims he's owed $300,000 plus interest. I'm just curious whether your clients believe that he's not entitled to anything or what your defenses are to this claim. Our defenses to the claim, let me step back for a second. I'm going to do my best to answer your question. There's certainly some form of agreement between the parties, right? There is agreement for legal representation. Now, whether that includes all the bells and whistles of that un-executed engagement agreement, that's the question that's in dispute. So to try to tie this back to your question, there certainly is some type of agreement. It's just trying to determine exactly what those terms are. So, you know, I don't want to just put any type of concession on the record that, yes, we owe money or, no, we don't owe money. We have a general denial and answer that we've filed, and that is what we would rest on. So it's not really in this record what your position would be. But this is an appeal from a denial of a motion to compel arbitration. So I would assume that any questions of arbitrability are done with if the order to compel arbitration is affirmed. If you would have to affirm the district court order on the issue of waiver, and if you affirmed, then there is no underlying question of arbitrability. We don't get there because we waived that right. And, of course, our position is that the record reflects that we haven't waived in light of NGRAMPA. And I guess just to conclude, I have a minute left here. All of these waiver cases, they're wrestling with this idea that the parties should be able to protect their rights in arbitration while also preserving arbitrability-based objections. Litigants shouldn't be forced into this untenable position right at the outset of a case to decide whether they should risk default in arbitration in order to preserve this arbitrability-based argument. And NGRAMPA strikes the perfect balance here. It doesn't adopt too strict of a rule on waiver. It recognizes that participation in arbitration is something that happens. And in the real world, as we discussed today, the parties are doing their best to resolve these disputes in arbitration. That was what was happening here. We pursued targeted discovery in an attempt to resolve this dispute. Have you attempted to settle this dispute at all? Your Honor, the record is silent as to attempts to settle. Well, we have an excellent mediation unit. And I was just curious if the parties thought mediation might help them to resolve this case. And, Your Honor, the record does reflect that. We have attended a mediation session with the district court. And to be frank, there's been settlement discussions throughout this case. So you don't think it would be fruitful if we referred this to our mediation unit? No. Okay. Absolutely not, Your Honor. All right. I just wanted to know. Thank you so much for your time today. I appreciate it. Thank you to counsel for your argument. The case is argued and submitted for decision by the court. We are in recess until 9.30 a.m. tomorrow morning, Honolulu time. All rise.
judges: SCHROEDER, RAWLINSON, BRESS